STATE OF NEBRASKA, APPELLEE, V. LEONARD J. SVITAK, APPELLANT.

228 N. W. 2d 306

Filed May 1, 1975. No. 39824.

T. Clement Gaughan and Richard L. Goos, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendant prosecutes this appeal from a sentence of life imprisonment for second-degree murder on a plea of guilty. Defendant contends the trial court erred in permitting him to waive his right to a jury trial and later to withdraw his plea of not guilty by reason of insanity and enter a plea of guilty to second-degree murder. Defendant also attacks the severity of his sentence. We affirm.

On March 5, 1974, the defendant was charged with second-degree murder. Defendant admits that he fired three shots from a .22-caliber rifle which caused the death of his ex-wife. The preliminary hearing was held on April 15, 1974, and defendant was bound over to the District Court for trial. His arraignment was continued for several weeks for the purpose of conducting psychiatric, psychological, and neurological examinations. On June 26, 1974, defendant entered a plea of not guilty by reason of insanity. Thereafter defendant filed a motion for waiver of jury trial, which motion was sustained on July 29, 1974. On August 27, 1974, defendant was allowed to withdraw his prior pleas and to enter a plea of guilty to second-degree murder. After an extensive presentence investigation, the trial court sentenced defendant to life imprisonment in the Nebraska Penal and Correctional Complex.

A review of the record convinces us that this appeal is patently frivolous. At all stages of the proceeding defendant was adequately represented by competent private counsel who took extreme pains to explain his rights and to be sure he understood the proceedings. During the course of their preparation for trial defendant was examined by three psychiatrists, a psychologist, and a neurologist, none of whom found him to be insane.

The following is from the report of one of the court-

appointed psychiatrists to the judge, who permitted defendant to withdraw his plea of not guilty by reason of insanity and to enter a guilty plea: "In my examination I addressed myself to the two psychiatric legal questions involved; one, his mental capacity to stand trial and two his mental capacity at the time of the crime.

"Firstly as to his mental capacity to stand trial. The following are some of the considerations I used in making my conclusions. Is the patient free of any serious mental illness? Does he understand he is being charged in the death of his ex-wife? Does he understand the role of the judge, jury, prosecuting attorney and witnesses? Can he relate in a significant way with his own attorney? Does he know he can call witnesses in his behalf; that thru his attorney he can challenge witnesses? Does he understand that if he is found guilty he can be punished? Will his behavior be disturbing to the trial? Can he control his behavior?

"To all the above considerations I would say yes and therefore, in my psychiatric opinion he has the mental capacity to stand trial.

"As to his mental responsibility at the time of the crime, I have used the McNaughton rules since these are the usual legal tests in Nebraska.

"1. Does Mr. Svitak have a mental illness?

"Mr. Svitak has both an alcoholic disorder as well as an inadequate personality.

"2. Does Mr. Svitak know the nature and quality of his act?

"Answer - Yes.

"3. Does Mr. Svitak know right from wrong?

"Answer - Yes.

"It is therefore, my conclusion that Mr. Svitak should be held mentally responsible for his actions."

Defendant is now suggesting that his motion to waive a jury trial and his request to withdraw his plea should not have been granted because of his alleged depression

and state of mind. This complaint is not supported by the record and is totally devoid of merit. Each of the two attorneys representing defendant advised the trial judge that after lengthy discussions with defendant their opinion was the waiver of jury trial would be in the best interest of defendant. The defendant signed the waiver of jury trial in open court and offered it as an exhibit. The trial judge then questioned the defendant at length. From the record it is clear to us the defendant understood what he was doing and knew if the waiver was granted he could not thereafter change his mind. The procedure employed was strictly in accord with section 1.2(b) of the American Bar Association Standards Relating to Trial by Jury.

In State v. Klatt (1974), 192 Neb. 219, 219 N. W. 2d 761, we held: "A written waiver of jury trial signed by defense counsel and acquiesced in by the defendant is sufficient to constitute a valid waiver of a criminal defendant's right to a jury trial." The waiver here was signed in open court by the defendant in the presence of the court and counsel.

On the morning defendant's case was set for hearing, defendant's counsel advised the court and prosecutor that the defendant had decided to withdraw his pleas of not guilty and not guilty by reason of insanity and enter a plea of guilty. They stated they had spent approximately 4 hours with defendant the previous evening explaining what they were attempting to prove by way of defense, with the hope of getting a conviction for manslaughter rather than second-degree murder. After much discussion the defendant stated he wished to plead guilty to second-degree murder rather than attempt to litigate the matter further. Counsel stated the decision to plead guilty was made by defendant with the express understanding that by so doing he would be found guilty of second-degree murder and would lose the opportunity of contending for a lesser-included offense. Counsel testi-

fied they thoroughly explained the penalties involved to defendant.

Before accepting the plea, the judge addressed the defendant personally to be certain defendant was well aware that if the plea of guilty was accepted he knew the rights he was waiving. The judge advised defendant he would waive his right to have the matter tried by the court, his presumption of innocence, the right to be confronted with witnesses against him, the right to present witnesses in his own defense, the right to remain silent, the right to insist the government prove his guilt beyond a reasonable doubt, and the right to challenge or attack confessions or statements he had made to law enforcement officials. In addition, the judge advised the defendant of the maximum and minimum possible penalties that could be imposed.

The trial judge next ascertained the factual basis for the charge. He further ascertained that no threats, force, inducements, or promises had been used on or made to the defendant to get him to plead guilty to the charge against his will. The defendant advised the trial judge that he entered his plea and waived the above-described rights freely, voluntarily, intelligently, and knew what he was doing. He further advised the trial judge that he entered his plea of guilty because he had committed the offense. Defendant's attorneys also advised the trial judge that their client was waiving his rights freely, voluntarily, and intelligently.

It is obvious that defendant became dissatisfied with his counsel after visiting with the inmate legal advisor in the Penal Complex. His dissatisfaction reached the point where he refused to discuss with them the motion for new trial they had filed on his behalf. They attempted to withdraw for that reason but the court reserved ruling on their motion and required them to appear with a representative of the public defender's office who represented defendant in all further proceedings.

The farcical nature of defendant's contention that he did not understand the effect of his guilty plea is apparent when one reads defendant's testimony on his motion for a new trial.  He there concedes he understood he was pleading guilty to second-degree murder.  He knew his attorneys could not get a plea bargain.  He also knew he could be sentenced to life imprisonment under the plea.

'The standard for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  State v. Clay (1974), 191 Neb. 654, 217 N. W. 2d 94.  The record clearly reflects defendant understood the effect of his guilty plea.  To permit him now to withdraw the guilty plea on contentions that are patently false and cannot be supported by the record would make a farce of a very adequate proceeding.  We commend the trial judge for his painstaking efforts to be certain defendant thoroughly understood the rights he was waiving and the effect of his plea.

Lastly, defendant complains his sentence to life imprisonment in the Nebraska Penal and Correctional Complex is excessive and should be reduced.  The record indicates, although defendant denies he knew about it, that the county attorney filed a charge of second rather than first-degree murder at the suggestion of the public defender, with the understanding that a guilty plea would be entered.  Defendant thereafter secured private counsel who represented him until the hearing on the motion for new trial.  These counsel advised the court they were unable to work out a plea bargain with the county attorney who told them he had made the only concession he was going to make in filing a charge of second-degree murder.  The crime involved herein was brutal.  Defendant shot his ex-wife with a .22-caliber rifle three times, once in the buttocks area, and subsequently twice in the head.  "Unless an abuse of discretion appears, a sentence within statutory limits will

not be disturbed on appeal." State v. Sheets (1974), 191 Neb. 153, 214 N. W. 2d 379. The sentence imposed does not reflect an abuse of discretion and consequently should not be disturbed.

The defendant's assignments of error are devoid of merit, and the judgment is affirmed.

AFFIRMED.